RACEWAY VIDEO AND BOOKSHOP, INC. et al., Appellees,

v.

CLEVELAND BOARD OF ZONING APPEALS et al., Appellants

[Cite as *Raceway Video & Bookshop, Inc. v. Cleveland Bd.
of Zoning Appeals* (1997), 118 Ohio App.3d 264.]

Court of Appeals of Ohio,
Eighth District, Cuyahoga County.

Nos. 70637 and 70639.

Decided Feb. 18, 1997.

*Berkman, Gordon, Murray & DeVan, J. Michael Murray* and *Steven D. Shafron,* for appellees.

*Dennis A. Matejka,* Assistant Director of Law, *Kelley, McCann & Livingstone* and *Mark J. Valponi,* for appellants Cleveland Board of Zoning Appeals.

*Walter, Haverfield, Buescher & Chockley, John H. Gibbon* and *Christopher L. Gibbon,* for appellant Western Elmwood Berea Corporation.

---

PATRICIA ANN BLACKMON, Judge.

In this consolidated appeal, the defendant-appellant, Cleveland Board of Zoning Appeals ("BOZA"), challenges a judgment by the trial court reversing its decision to rescind a lot split and revoke a building permit issued to plaintiff-appellee, Raceway Video and Bookshop, Inc. Western–Elmwood–Berea Corporation ("WEBCO") also appeals the trial court's decision. BOZA assigns two errors for our review:

"I. The board of zoning appeals' determination that a resident district in Lakewood should be considered when applying C.C.O. 347.07 is reasonable and must be upheld.

"II. The evidence before the board of zoning appeals and the law supported a determination that Saw, Inc. was an institutional use as defined in C.C.O. 325.36."

WEBCO assigns the following errors:

"I. The trial court erred in reversing the Cleveland Board of Zoning Appeals' decision denying Raceway's building permit because Raceway's adult entertainment use was less than 1000 feet from an institutional use (April 5, 1996 order).

"II. The trial court erred in reversing the Cleveland BZA's decision denying Raceway's building permit because Raceway's adult entertainment use was less than 1000 feet from residence districts. (April 5, 1996)

"III. The trial court erred in reversing the Cleveland BZA's decision denying the lot split. (April 5, 1996)"

After reviewing the record and the arguments of the parties, we affirm the decision of the trial court. The apposite facts follow.

Raceway Video and Bookshop, Inc. ("Raceway") sought to open an adult bookstore and mini-motion picture theatre on its land located at 3101 Berea Road in Cleveland. Zoning code provisions required an adult entertainment establishment to be a minimum of one thousand feet from any residential district. Unsure about whether it would meet the one-thousand-foot requirement, Raceway applied to the city for a lot split of its land. The split would create two lots. Parcel 1 would measure more than eight thousand square feet. Parcel 2 measured over one thousand feet, which was the area chosen for the adult entertainment use.

The lot split was granted. After determining that Raceway met all the requirements, the city issued a building permit for the adult bookstore/theater. The permit was revoked on April 18, 1995, when the city discovered that the current owner of the property, Acorn Properties, had not consented to the lot split. Acorn Properties submitted its approval of the split a few days later, and the city approved the lot split again on May 1, 1995. The building permit was reinstated on May 3, 1995.

WEBCO, a neighborhood improvement group, appealed the approval of the lot split and the granting of the building permit. BOZA made a preliminary determination that WEBCO had standing to appeal the decisions and had timely filed its appeals. A hearing was held on September 25, 1995. On October 9, 1995, BOZA unanimously decided in favor of WEBCO, holding that Parcel 1 would not prove taxable for special assessments.

On October 23, 1995, Raceway appealed to the court of common pleas. WEBCO intervened in the action, citing its interest in protecting the integrity of the neighborhood. Raceway challenged BOZA's decision and argued, among other things, that Parcel 1 would be an eight-thousand-square-foot lot suitable for various purposes, including a cellular communications tower or an automobile repair garage. Raceway also argued that BOZA erred in finding that the adult bookstore/theatre violated Section 347.07 of the Cleveland Codified Ordinances because it was within one thousand feet of a residence district and within one thousand feet of an institutional use.

Section 347.07(b)(1) prohibits an adult entertainment facility from being established within one thousand feet of a residence district. Raceway argued that its lot was not within one thousand feet of any residential district in Cleveland and that the board erred by considering its proximity to a residential district in Lakewood.

Section 347.07(b)(4) prohibits an adult entertainment facility from being located within one thousand feet of an institutional use. BOZA concluded that the sheltered adult workshop ("SAW") operated by the Cuyahoga County Board of Mental Retardation/Developmental Disabilities and located two hundred forty-seven feet from Raceway's lot was an institutional use. Section 325.56 defines an "institutional use" to include "buildings in which people suffering from physical limitation because of health or age are harbored for medical, charitable or other care or treatment." Institutional use buildings include hospitals, sanatoriums, infirmaries, nursing homes, convalescent homes, old folks homes, homes for the aged, rest homes, orphanages, and nurseries for children under five years of age. Raceway argued that the SAW facility was not an institutional use because no treatment or personal care was administered there.

The court of common pleas reversed BOZA's decision, concluding that its rulings were not in accord with the evidence presented. The court pointed to testimony by the city's zoning administrator and the Deputy Commissioner of Building and Housing that they have "never before looked at residential districts outside of the City of Cleveland when evaluating a building plan." The court also held that "according to the evidence,.the workshop merely provided a location where those with mental or physical limitations could work." WEBCO and BOZA both appealed.

Justice Oliver Wendell Holmes once admonished Learned Hand for beseeching him to "do justice." Justice Holmes in a bellicose tone retorted, "My job is to follow the law." Hand loved to tell that story because it demonstrated the truly murky state of decision-making that we as judges face. To follow the law is often painful when justice seems to require another course. And yet, justice and the law are synonymous and twin companions in a noble cause.

The trial judge in this case voiced without reservation or thought her disdain for these so-called adult entertainment facilities. We, too, find ourselves disposed to do likewise. However noble or righteous our feelings are, they have no place in this case. Thus, we understand and revel in Justice Holmes's observation. Our task today is to follow the law, and that we shall do.

██ The standard of review is axiomatic. As to the historical or narrative facts, we give total and absolute deference to the trial court as fact-finder. As fact-finder, the trial court acts within its sound discretion and its discretion will not be disturbed by us unless there is a showing of abuse of that discretion. See *Red Garter, Inc. v. Cleveland Bd. of Zoning Appeals* (1995), 100 Ohio App.3d 177, 181, 652 N.E.2d 260, 262–263; *Northeast Ohio Emergency Affiliates v. Ohio State Med. Bd.* (1994), 93 Ohio App.3d 1, 6, 637 N.E.2d 376, 379–380. See, also, *Kisil v. Sandusky* (1984), 12 Ohio St.3d 30, 34, 12 OBR 26, 30, 465 N.E.2d 848, 852, fn. 4; *Liberty Sav. Bank v. Kettering* (1995), 101 Ohio App.3d 446, 451, 655 N.E.2d 1322, 1325. As defined by the Ohio Supreme Court, a trial court's decision constitutes an abuse of discretion when it is unreasonable, arbitrary, or unconscionable. *Castlebrook Ltd. v. Dayton Properties* (1992), 78 Ohio App.3d 340, 346, 604 N.E.2d 808, 811–812, citing *Huffman v. Hair Surgeon, Inc.* (1985), 19 Ohio St.3d 83, 87, 19 OBR 123, 126–127, 482 N.E.2d 1248, 1251–1252. It would be an abuse of discretion if the trial court had ignored competent, credible evidence in BOZA's administrative record.

██ On matters of law—choice, interpretation, or application—our review is, of course, plenary. We give no deference and exercise our right to *de novo* review by looking at the correctness with which the trial court acted.

During oral argument, WEBCO suggested that the trial court as the reviewing court of BOZA was obligated to give complete deference to that agency's fact-finding and that as a matter of law the trial court erred.

■ "Where the court, in its appraisal of the evidence, determines that there exist legally sufficient reasons for discrediting certain evidence relied upon by the administrative body, and necessary to its determination, the court may reverse, vacate, or modify the administrative order." *Ohio Historical Soc. v. State Emp. Relations Bd.* (1993), 66 Ohio St.3d 466, 470–471, 613 N.E.2d 591, 595.

■ The trial court need not defer to the agency's factual determinations if they are found to be "internally inconsistent, impeached by evidence of a prior inconsistent statement, rest upon improper inferences, or are otherwise insupportable." *Id.* at 471, 613 N.E.2d at 595.

The trial court found BOZA's factual determination unsupported by competent, credible evidence. Therefore, it set aside those findings as it was by law bound to do. We conclude that the trial court was within the bounds of its authority as fact-finder to reverse BOZA and did not abuse its discretion in so doing, as the following discussion will reveal.

In the first issue, we determine whether the trial court erred in finding that residential districts in Lakewood are not to be considered when determining whether a proposed adult entertainment use violates C.C.O. 347.07(b)(1). C.C.O. 347.07(b)(1) provides that no adult entertainment use shall be established within one thousand feet of a residence district. C.C.O. 335.02 defines "Residence Districts" as "any one or all of the first six use districts enumerated in Section 335.01." C.C.O. 335.01 provides:

"The City is hereby divided into the Public Land Protective District and into fifteen use districts which shall be known, in order or restrictiveness, beginning with the most restrictive as: Limited One–Family Districts; One–Family Districts; Two–Family Districts; Limited Multi–Family Districts; Multi–Family Districts * * *."

■ A reading of C.C.O. Sections 347.07(b)(1), 335.02, and 335.01 reveals that the residence districts referred to in C.C.O. 347.07(b)(1) are those located in "the City." The Cleveland Codified Ordinances govern the city of Cleveland. Consequently, the trial court did not act unreasonably in ruling that residential districts in Lakewood are not to be considered when determining whether an adult entertainment use would violate C.C.O. 347.07(b)(1). If the city of Cleveland intended such a determination, it should place those citizens relying on its laws on notice of that intent.

BOZA urges us to make a distinction between the definition of "Residence Districts" in C.C.O. 335.02 and "residence districts" as used in C.C.O. 347.07(b)(1). However, he provides us with no case authority in support of his argument, and we are unconvinced that the use of upper case or lower case signals a definitional distinction in the codified ordinances.

Finding no evidence that the trial court abused its discretion in ruling on the issue of whether the adult entertainment use violated C.C.O. 347.07(b)(1), we overrule the first assignment of error raised by BOZA and WEBCO.

We must next determine whether the trial court erred in finding that the sheltered adult workshop constituted an "institutional use" for purposes of C.C.O. 345.07(b)(4). C.C.O. 345.07(b)(4) provides that "no adult entertainment use shall be located within 1000 feet of a church, hospital, elementary, junior high or high school, library, playground, or *institutional use as defined in Section 325.36 hereof.*" (Emphasis added.) C.C.O. 325.36 defines an "Institutional H Occupancy Classification" as "a building classification based on occupancy which includes all buildings in which people suffering from physical limitation because of health or age are harbored for medical, charitable or other care or treatment, and includes, among others: Hospitals; Sanitariums and sanatoriums; Infirmaries; Nursing homes; Convalescent homes; Old folks homes; Homes for the aged; Rest Homes; Orphanages; and Nurseries for children under five years of age."

The trial court ruled that the sheltered adult workshop located within one thousand feet of the adult bookstore/theatre was not an institutional use because it provided no medical, charitable, or other care or treatment. BOZA argues that the evidence presented at the hearing revealed that the workshop provided daily treatment to mentally retarded and developmentally disabled persons by giving them job training and work skills. However, the testimony of Thomas Ardito, Chief Building Inspector for the city of Cleveland, revealed that the workshop is a place of employment, not a treatment facility. Ardito visited the workshop twice and gave the following testimony about its operations:

"Q: Could you tell me what you observed in that facility?

"A. Well, it appears to be like a mail order room. I think there were probably about 25 employees the time we were there, 24, 25, somewhere in through there. I noticed a couple supervisors, and basically, a lot of paper and envelopes, certain work stations. I spoke with the supervisor. And from what he told me, they do mailings for other companies * * *.

"Q: So, when you walked in, from your observation, it looked like any other workplace?

"A: Correct.

"Q: Did you see people receiving any medical care while you were there?

"A: No.

"Q: Did you see people receiving any other kind of care or treatment?

"A: No.

"Q: They were working?

"A: Correct."

Deputy Commissioner for the Division of Building and Housing, Laik Ali, gave the following testimony:

"I can say that this facility will not fall under institutional age occupancy, because what we are talking about—institutional uses—are where personal care is provided them. And also it says clearly medical or physical or personal care. And I understand from Mr. Ardito that he talked to a manager there. He says the people who are coming from the mental health facility, they are being treated as just the employees. They are even paid as an employee. So, it really doesn't make it an institutional age occupancy."

The above testimony provided a reasonable basis for the trial court's conclusion that the sheltered adult workshop was not an institutional use. Accordingly, we conclude that the trial court did not abuse its discretion in this regard; consequently, we overrule the second assignment of error by BOZA and WEBCO.

■ Finally, we must address WEBCO's allegation that, after a lot split, one of the parcels of land would not be taxable for special assessments. At the BOZA hearing, the following testimony was given by Pearl Jackson, Chief City Planner and Manager of the Zoning Section:

"Q: As a City Planner, do you believe that this Parcel Number 1, the smaller parcel, is a useless or nonconforming lot?

"A: Definitely not.

"Q: And why is that?

"A: Well, it is over 8000 square feet. There are uses that could go on a lot that size."

Samir Mohammad, Assistant City Planner for the city of Cleveland, also stated that Parcel 1 was not a useless or nonconforming lot. Robert Brown, Assistant Director of the City Planning Commission, testified there was no way to make a determination that Parcel 1 was a useless and nonconforming lot. He described the lot as over eight thousand square feet in area and said it was comparable to many other buildable lots in the city.

. The evidence presented clearly supports the trial court's decision. WEBCO's third assignment of error is overruled.

 In three cross-assignments of error, BOZA argues that WEBCO lacked standing to file its appeal before BOZA. When deciding whether a party has standing to bring an appeal under R.C. 2506.01, courts must determine if the administrative order appealed from determines the rights, duties, privileges, benefits, or legal relationships of a specified person. *Westgate Shopping Village v. Toledo* (1994), 93 Ohio App.3d 507, 513, 639 N.E.2d 126, 129–130. Evidence that a zoning decision will reduce the value of his land will support a determination that a party has been directly affected by the zoning decision. *Id.* at 514, 639 N.E.2d at 130–131.

 Appeals governed by C.C.O. 329.01(e) can be brought by "any person who deems himself aggrieved or adversely affected by the decision." John Jazwa of B & B Paper Company testified that he was concerned about property values in the neighborhood. WEBCO member Richard Weidemer, owner· of Hinkley Lighting, testified as follows:

"We believe that in addition to agreeing with everything that has already been said, I'm concerned about the viability of the neighborhood, both the industrial neighborhood and the residential neighborhood."

Weidemer's concerns were shared by John Ripich of American Tank and Fabricating Company:

"[M]ost of what has been said here today with the concerns of the other people who have spoken before me are also my concerns."

This evidence is substantial enough to support BOZA's conclusion that WEBCO was an aggrieved party and had standing to bring its appeal. Because we find that WEBCO had standing to bring its appeal, any error by the trial court in failing to address this issue is harmless.

Finally, since we conclude that the trial court did not act out of the bounds of its discretion, we are not required to reach the constitutional issues raised herein.

*Judgment affirmed.*

JAMES D. SWEENEY, P.J., and MATIA, J., concur.