JOURNAL ENTRY AND OPINION
Appellant, City of Westlake ("Westlake") claims that the trial court erred in finding that its rejection of appellee Andreano's ("Andreano")[1] plan for residential development was arbitrary, capricious and unconstitutional. For the reasons set forth below, we affirm the judgment of the trial court.
In 1975, Bretton Woods Park, Inc. purchased approximately 100 acres of land (the "Parcel") in the City of Westlake.[2] Three years earlier, in 1972, the Cuyahoga County Board of Commissioners established an extension of the Bassett-Stearns Road, now commonly referred to as the Crocker Road extension ("Extension"). The Extension was divided into two parts, namely, north and south. The northern part of the Extension has since been built and runs from I-90 south to Center Ridge Rd. The southern part, however, has yet to be constructed and is supposed to run from Lorain Rd. to I-480.
At all times relevant to the facts in this case, the centerline of the Extension runs, from north to south, through the Parcel.[3] By operation of law, the actual construction of the southern portion of the Extension had to be completed by August 1979.[4] No construction has ever been started on this portion. It is undisputed that Andreano always knew that the company's own development plans for the land would have to accommodate the future construction of the southern part of the Extension. So, in 1978, the first subdivision of the Parcel, known as Bretton Woods I, was approved, platted, and did not include any portion of the Extension.
In 1984, Andreano submitted plans to build the next phase of Bretton Woods, Bretton Woods II, which, again, accommodated the future construction of the Extension by reducing sublots in the development. The plan for Bretton Woods II was approved and platted in October 1989. From 1989, up to and including the present date, the remaining 46.1 acres of the Parcel remained undeveloped, though Andreano has continually paid taxes and insurance on the land.
In January 1999, with no indication that the rest of the Extension would ever be built, Andreano applied for approval of a plan to construct 88 lots on the remaining acreage of the Parcel.[5] The plan for the individual lots in Bretton Woods III fully complied with Westlake's then existing minimum area-requirement ordinance by requiring a minimum lot size of 15,000 sq. ft. with building and street line minimum lot widths of 85 ft. and 45 ft., respectively.
Five days after Andreano submitted the plan for Bretton Woods III, Westlake and several of its agents, including the law director, realized that the proposed configuration for the site would interfere with the Extension. On March 18, 1999, Westlake council passed ordinance 1998-284 ("Ordinance"), which became effective on April 18, 1999. The Ordinance increased minimum lot size to 20,000 sq. ft. and minimum lot width at the building line to 100 ft. In effect, the Ordinance made Andreano's plan for Bretton Woods III unlawful. And despite having asked for a vote by the planning commission three times between January and March 29, 1999, Andreano's plan did not make the voting agenda of the commission until April 19, 1999, one day after the Ordinance was passed. Not surprisingly, Andreano's plan for Bretton Woods III was rejected by Westlake, without any stated reason, on May 6, 1999 for the following reason after the commission recommended it be rejected:
 (1) It did not incorporate an approved thoroughfare plan [Crocker Road];
 (2) It did not incorporate the planned Crocker Road; and
 (3) Its sublots did not meet the lot size and frontage requirements of the Ordinance.
Though Westlake had denied Andreano's plan for Bretton Woods III, it, nonetheless approved plans, over the next six months, for other proposed subdivisions which also did not comply with the Ordinance.
Andreano timely appealed Westlake's decision to reject the plan for Bretton Woods III. Thereafter, the Cuyahoga County Common Pleas Court held a two-day hearing on Andreano's appeal. On February 6, 2001, the court determined that Westlake's decision was arbitrary, capricious, contrary to Westlake's own ordinances and unconstitutional. Westlake timely appeals the decision of the trial court and presents two assignments of error. Westlake's first claimed error states:
 THE TRIAL COURT ERRED WHEN IT DETERMINED THAT THE ACTION OF CITY COUNCIL IN DENYING APPELLEE'S SUBDIVISION PLAN WAS ARBITRARY, CAPRICIOUS, AND CONTRARY TO THE CITY'S CODIFIED ORDINANCES AND UNCONSTITUTIONAL.
In an appeal brought pursuant to R.C. 2506.04, the standard of review for a court of appeals is far more narrow than the standard of review in the common pleas court. Henley v. City of Youngstown (2000),90 Ohio St.3d 142, 147, 735 N.E.2d 433. A common pleas court considers the "whole record" plus any new or additional evidence. Henley at 148 citing Smith v. Granville Twp. Bd. of Trustees (1998), 81 Ohio St.3d 608,612, 693 N.E.2d 219, 223.
However, R.C. 2506.04 "grants a more limited power to the court of appeals to review the judgment of the common pleas court only on `questions of law.' The statute does not provide "the same extensive power to weigh `the preponderance of substantial, reliable and probative evidence,' as is granted to the common pleas court." Henley at 147, citing Kisil v. Sandusky (1984), 12 Ohio St.3d 30, 34. We may decide whether there exists a preponderance of such evidence, but "[a]ppellate courts must not substitute their judgment for those of an administrative agency or a trial court absent the approved criteria for doing so."Henley at 147 citing Lorain City School Dist. Bd. Of Edn. v. State Emp.Relations Bd. (1988), 40 Ohio St.3d 257, 261, 533 N.E.2d 264, 267. The approved criterion in the appellate court is whether the trial court abused its discretion. The term "abuse of discretion" connotes more than just an error of law or judgment; it implies that the court's attitude was unreasonable, arbitrary, or unconscionable. Raceway Video andBookshop, Inc. v. Cleveland Board of Zoning Appeals (1997),118 Ohio App.3d 264, 692 N.E.2d 656; OSWGI, L.P. v. N. Royalton Bd. ofZoning Appeals (1996), 113 Ohio App.3d 268, 271, 680 N.E.2d 1037; 1476Davenport Ave. Limited Partnership v. City of Cleveland (Nov. 10, 1999), Cuyahoga App. No. 74810, unreported, 1999 Ohio App. LEXIS 5293.
In the case at bar, Westlake rejected Andreano's plan for Bretton Woods III only after it had passed and put into effect the Ordinance, which made the plan nonconforming. The court of common pleas, in a very comprehensive decision, made the following observations regarding that process:
* * *
 When Andreano filed his request for approval of the Brettton Woods III subdivision on Jan. 8, 1999 the building code required 150,000 square feet per lot, and minimum width at the building line of 85 feet. At that time, Ord. 1998-284 had been placed on first reading and would require 20,000 square feet per lot and 100 feet in width at the building line. The new ordinance was later adopted on March 18, 1999, signed by the Mayor the following day, and took effect on April 18, 1999. The very next day, the Planning Commission rejected Andreano's plan on the grounds that it did not comply with the 1990 Guide Plan by accommodating the Crocker Rd. Extension, and that it did not comply with Ord. 1998-284, which had taken effect just the day before.
 Adreano [sic] also points out that Westlake approved at least five proposed subdivisions under the old 15,000 square foot ordinance after adopting Ord 1998-284. These include Country Club Estates, The Glens, Oak Park Estates (Cotswold Manor), Rosewood Estates #5, and Capel Vale. Westlake attempts to distinguish each case, but the fact remains that the City does appear to be willing to pick and choose when an ordinance shall govern a subdivision and when it may be in the City's best interests to apply an ordinance which is no longer in effect.
* * *
 Andreano has been waiting and paying taxes on these 46 acres since 1988, and has decided to force Westlake to buy the land or let him develop it. * * *
* * *
 Westlake takes the position that when Andreano filed his subdivision for approval with lots of 15,000 square feet and 85 foot frontage, the City Council had already placed on first reading Ord. 1998-284 * * *. The action by Westlake in delaying final action of Andreano's subdivision for almost four months until that ordinance was adopted, signed by the Mayor, and became effective was clearly improper. * * *
* * *
 It is apparent that Westlake did not comply with its own ordinances. * * *
* * *
 After two days of careful trial, careful study of all pleadings and briefs, a review of all evidence admitted, and consideration of applicable case law, the Court makes the following findings:
* * *
 4. The denial of Plaintiff-Appellant's application on the basis of the 1990 Guide Plan and the basis of Ord. 1998-284 was arbitrary, capricious, contrary to the Codified Ordinances of the City of Westlake, and unconstitutional.
The common pleas court followed the proper judicial standards and procedures pursuant to R.C. 2506.03. The court held a two-day trial in which it considered all the evidence submitted by the parties. Considering the full and fair opportunity that each side had to present its case, the actual and uncontroverted evidence, and the applicable law, we do not find that the common pleas court abused its discretion in reversing Westlake's decision.
The city's decision was unconstitutional, arbitrary, and capricious because it attempted to deny Andreano his right to use the remaining acreage in the Parcel. In Ardire v. City of Westlake Planning Commission
(Feb. 4, 1993), Cuyahoga App. No. 61636, unreported, 1993 Ohio App. LEXIS 620, plaintiff was denied a request to split his property. The City denied the request because of "the uncertainty of [a] future road on the property." On appeal, this court stated:
 The constitutional right to use one's property without interference is fundamental. A government cannot base its denial of such a substantive right on hunches.
The City's denial was reversed because it was based on reasons too speculative.
In the case at hand, it is undisputed that, at the time of the plan submission, Bretton Woods III was in full compliance with Westlake law and that Westlake had done nothing to effectuate work on the extension. Further, there is sufficient and reliable evidence that Westlake did not comply with its own ordinances. The trial court found that the 1990 Guide Plan, which Westlake attempted to argue prohibited Andreano's proposed subdivision plan because it interfered with the Extension, was never put into effect. The record is clear that in order to effectively rely upon the 1990 Guide Plan, Westlake first had to follow ordinances 1125.06 and 1134.04, both of which expressly require any such Guide Plan to be "duly approved" and eventually "adopted and recorded by the Commission." At the time of Andreano's appeal, Westlake had not taken the required action with regard to the 1990 Guide Plan. The court also determined that after more than ten years Westlake still has done nothing to effectuate the establishment, let alone actual construction, of the Extension. The result of Westlake's procrastination has thwarted and continues to deprive Andreano of his ability to either develop his property or to receive a fair price for the land.
Moreover, there is evidence the city treated Andreano differently from other applicants. In the record before us, there is more than sufficient, reliable, and probative evidence to support the trial court's conclusion that the city approved other subdivision proposals that did not comply with the Ordinance. Westlake's actions lead to the inevitable conclusion that Andreano was improperly singled out and treated differently. The trial court did not err, therefore, in determining that both the Ordinance and the 1990 Guide Plan were improper attempts by Westlake to artificially block Andreano's plan for Bretton Woods III. Westlake's first assignment of error is without merit and overruled.
Appellant's second assignment of error follows:
 THE TRIAL COURT ERRED WHEN IT DETERMINED THAT THE CITY'S GUIDE PLAN MUST BE APPLIED IN ACCORDANCE WITH THE PROCEDURES SET FORTH IN THE CODIFIED ORDINANCES WHERE THOSE ORDINANCES ARE INAPPLICABLE.
As discussed above, the trial court determined that Westlake did not comply with its own ordinances. The trial court found that the 1990 Guide Plan was never put into operation. The record is replete with evidence that, in order to effectively rely upon the 1990 Guide Plan, Westlake first had to approve, adopt and record the Guide Plan. Ord. 1125.06 and 1134.04. See, K-Mart Corporation v. City of Westlake (1997),121 Ohio App.3d 630, 700 N.E.2d 659. Westlake did not engage in any of the acts necessary to make the 1990 Guide Plan a lawful device in order to reject Andreano's proposed plan for Bretton Woods III. Clearly, Westlake did not comply with its own ordinances at the time of Andreano's appeal.
And we cannot say that the trial court erred or abused its discretion in deciding that "[t]he Guide Plan must be applied in accordance with the procedures set forth in the Codified Ordinances * * *." Contrary to Westlake's argument, there is more than enough evidence to conclude that Westlake did not follow the two ordinances and that, therefore, the 1990 Guide Plan was not in effect at the time of the appeal because of Westlake's inaction. Westlake's second assignment of error is overruled.
We find, as a matter of law, that the trial court did not commit an abuse of discretion because there exists a preponderance of reliable, probative, and substantial evidence to support the court's finding in favor of Andreano. The judgment of the trial court is affirmed.
Judgment accordingly.
It is ordered that appellee recover of appellant his costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing the Common Pleas Court to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
TIMOTHY E. McMONAGLE, J., and JAMES D. SWEENEY, J., CONCUR.
[1] Andreano is the trustee for the Bretton Woods Park, Inc.
[2] In 1975, the four principals of the corporation were John Costello, Irving Waterbury, John Stradtman, and Carl S. Andreano Only two of the original four principals in the corporation are still alive today: John Stradtman and Carl Andreano.
[3] At the time of Bretton Woods I, Westlake had a Guide Plan 1980, which did not include the Extension.
[4] Westlake had seven years to fully open the Extension. After the lapse of seven years, the establishment of the Extension expired. R.C.5553.10.
[5] Earlier, Westlake had drafted Guide Plan 1990, which, unlike Guide Plan 1980, did refer to the Extension; however, this plan has never been adopted and approved.