LESSER et al., Appellants,

v.

CITY OF CLEVELAND et al., Appellees.

[Cite as *Lesser v. Cleveland* (1995), 102 Ohio App.3d 151.]

Court of Appeals of Ohio,
Eighth District, Cuyahoga County.

No. 65156.

Decided March 27, 1995.

152

*Lois A. Gruhin*, for appellants.

*Sharon Sobol Jordan*, Cleveland Director of Law, and *Dennis A. Matejka*, Assistant Director of Law, for appellees.

---

DONALD C. NUGENT, Judge.

This is an appeal of Brian Lesser, Shahpor Mobasseri and Fatemeh Khodabandlou ("appellants") from a judgment of the Cuyahoga County Court of Common Pleas dismissing their appeal, pursuant to R.C. Chapter 2506, from an order of the Cleveland Board of Zoning Appeals ("BZA") denying appellants' request for a change of use and/or variance for their property located at 727 East 185th Street, Cleveland, Ohio.

On November 28, 1990, appellants submitted an application for plan examination and building permit to the Department of Community Development, Division of Building and Housing of the City of Cleveland. Appellants' application sought a change of use for property owned by Lesser and rented to Mobasseri and Khodabandlou. Appellants sought to continue using the property, located in a general retail business district, as an auto repair shop. In the application, appellants "request[ed] to continue using [the building] for the sale of automobile parts and accessories; and the installation of said parts and accessories, as well as the repair of automobiles, including but not limited to tune-ups, brakes, exhaust systems, shock absorbers, and tires."

On November 30, 1990, a commissioner for the city of Cleveland (the "city") notified appellants that use of the property was in nonconformance with the zoning code. In his notice of nonconformance, the commissioner explained that an auto repair shop is not permitted in a general retail business district.

Appellants appealed the notice of nonconformance to the BZA. In their application to appeal to the BZA, appellants maintained that they were appealing "for a permit to erect, alter, convert, maintain and/or use permises [*sic*] * * * as an auto repair garage." At the hearing before the BZA, appellants and their attorney were sworn in. Michael Gaeta, the city's zoning engineer, represented that the property in question consists of a fifty-by-one-hundred-foot corner lot at East 185th Street and Mohawk Avenue. It is located in a general retail business district and is occupied by a two-story masonry store and suites building. The building has five service bay doors facing the side of Mohawk Avenue, and the upstairs portion is vacant. Gaeta further represented that the tenants have been operating an auto repair shop for two years and "their operation is mechanical repairs, stated tuneups, brakes, lubes, et cetera."

The permit history of the property was discussed by Anthony Costanza, secretary of the BZA. Costanza represented that prior to 1962, the property in question was operated as a hardware store. In 1962, a building permit was issued by the city to the Lesser & Lesser Firestone Company, which operated a retail tire store, to utilize the rear of the building as a garage for installation of tires sold by the store. Pursuant to the permit, the city allowed the Lessers to install five overhead garage doors in the rear of the building and to convert that portion of the building into a garage.

Subsequently, on April 29, 1983, a change of use permit was issued to convert the tire store into a store for the sale and installation of automotive security systems. Again, pursuant to the permit issued by the city, the Lessers were permitted to convert the Firestone Tire Store into Chapman Automotive Security System, a retail store for the sale and installation of automotive security systems. The garage of the building was permitted to be used for installation of said automotive security systems in the same way that the garage was previously used for the installation of tires.

Costanza further testified that both the Firestone Tire Store and the Chapman Automotive Security System store were permitted uses in a general retail business district.

Appellants' attorney then gave an opening statement to the BZA while under oath. Appellants' counsel represented that in 1962, Lesser & Lesser Firestone moved into the building and, after having obtained all necessary city permits, spent substantial sums to make the property suitable for a retail tire store with attendant installation services. The Lessers improved the property by construct-

ing a service garage. They installed five new service bays, five new overhead service doors and five curb cuts on Mohawk Avenue.

In 1983, the property was converted into an automotive security systems sales and installation store. Again, all necessary permits were issued by the city approving the use of the premises. Subsequently, in 1988, Lesser rented the premises to Mobasseri for use as a "general service station type automobile repair business." Appellants' counsel then gave a brief description of the neighborhood. Across the street from the property is a Medic Drug Store, two bars are located nearby and, down the road, in the same general retail business district, is Rink's Auto Repair shop.

Appellants' counsel continued by noting that one of appellants' neighbors in the general retail business district, Rink's Auto Repair, was, at one time, a full-service gas station which subsequently removed its gas pumps and has legally continued to do business as an auto repair shop. Apparently, Rink's Auto Repair has been cited by the building department for doing "incidental transmission work" and "on one or two occasions some heavy engine work." Nonetheless, Rink's Auto Repair's basic operation is "brakes, tuneups and the type of automobile repair work that is permitted in service stations, which is a permitted use in the District."

Appellants' counsel further stated that appellants "want to continue to operate just as our neighbor has. We want—we are operating, basically, a repair, restorage garage which is a permitted use." However, counsel acknowledged that "on occasion, * * * [appellants] may have done one or two transmissions, and [they] may have done, in the past, one or two motor jobs."

Councilman Michael Polensek testified next. Councilman Polensek has received several complaints that the property in question was not being maintained. He stated that he drove past the building and observed two large broken signs on the building, oil and grease stains on the sidewalk bordering Mohawk Avenue, and broken bottles and glass on the property. Councilman Polensek further represented that he had no problems with the operation of a repair garage at the property; rather, his concern was with the way the property was being maintained. Mr. Spendel, an owner of nearby residential property, also spoke of the complaints his tenants were registering concerning the lack of maintenance at the property in question. Spendel complained of grease and oil spilling on the sidewalks, used parts cluttering up the property, loud noises, and cars being parked on the sidewalk.

Appellants' counsel then reiterated to the BZA that they believed the auto repair business in question has "prior nonconforming use rights and, if not, then appellants were requesting a variance."

Next, although the Chairman of the BZA announced that he would not allow the tenant or owner to give testimony, Lesser was given the opportunity to speak under oath. Lesser stated that his father started the business in 1942 before the instant building was constructed. The building was bought from the owners of a "Real Hardware" store, and the Lessers made "tremendous improvements" to the building. Lesser stated that all along the city has issued all necessary building and use permits and gave them permission to construct the building and the attached garage. The Lessers eventually leased the store to Firestone Tire & Rubber Company in 1978, which obtained a use permit allowing it to operate a store for the repair of automobiles and the installation of shock absorbers, brakes, mufflers and tires.

Lesser acknowledged that the current tenants did not "have the best house-keeping habits" and did not maintain the property as well as he would like. He maintained that the beer bottles were the result of too many bars in the neighborhood and the broken windows the result of not enough police in the neighborhood.

Based on the foregoing, the BZA sustained the decision of its commissioner and refused appellants' appeal. In its resolution denying appellants' appeal, the BZA made the following findings:

"1. The evidence establishes that the property has been located in a General Retail District since 1929; that prior to 1962 the building was being used as a hardware store, a permitted use in the district; that in 1962 a permit was issued to make alterations and an addition to a 'retail outlet'; that in fact the building was converted to tire sales and installation and auto repair, a nonpermissible use in a General Retail District.

"2. No exceptional local condition exists in this vicinity to justify the Board in making the exception requested.

"3. Granting the appeal would be detrimental to the general welfare of the neighbors and to the value of their properties and would be contrary to the intent and purpose of the zoning ordinances.

"4. In being refused this appeal the owner will not suffer an unreasonable hardship since he is not denied any use of property not also denied other owners in that district similarly situated * * *."

Appellants appealed the decision to the trial court pursuant to R.C. Chapter 2506. Appellants presented two arguments before the trial court. First, appellants maintained that they demonstrated their entitlement to a variance to conduct their auto repair business at the subject property. Second, appellants argued that their auto repair business is a permitted use in a general retail business district and that the building department should have issued appellants

an occupancy and/or change of use permit. Following briefing and submission of the administrative record, the trial court affirmed the decision of the BZA, and this appeal follows.

Appellants raise the following assignment of error for our review:

"THE TRIAL COURT ERRED IN AFFIRMING THE DECISION OF THE CLEVELAND BOARD OF ZONING APPEALS."

Appellants argue that the trial court erred in affirming the decision of the BZA, which denied their request for a use variance. Alternatively, appellants argue that the trial court erred in affirming the decision of the BZA to deny them an occupancy and/or change of use permit to operate the auto repair business.

In an administrative appeal, pursuant to R.C. 2506.04, a court of common pleas, after reviewing the entire record, must affirm the decision of the administrative agency if it is supported by a preponderance of substantial, reliable and probative evidence. *Dudukovich v. Lorain Metro. Hous. Auth.* (1979), 58 Ohio St.2d 202, 207, 12 O.O.3d 198, 201–202, 389 N.E.2d 1113, 1116–1117; *Families Against Reily/Morgan Sites v. Butler Cty. Bd. of Zoning Appeals* (1989), 56 Ohio App.3d 90, 91, 564 N.E.2d 1113, 1115–1116; *In re Annexation of Riveredge Twp. to Fairview Park* (1988), 46 Ohio App.3d 29, 545 N.E.2d 1287. If a preponderance of substantial, reliable and probative evidence does not exist to support the administrative agency's decision, the common pleas court may reverse, vacate, modify or remand. *Dudukovich, supra; Families Against Sites, supra.* Thus, to a limited extent, a substitution of judgment by the common pleas court is permissible. *Univ. of Cincinnati v. Conrad* (1980), 63 Ohio St.2d 108, 111, 17 O.O.3d 65, 67, 407 N.E.2d 1265, 1267–1268. Pursuant to R.C. 2506.04, a judgment of the court of common pleas may be appealed to an appellate court on questions of law. Our inquiry is limited to a determination of whether we can say, as a matter of law, that there did exist a preponderance of reliable, probative and substantial evidence to support the findings of the trial court. *Dudukovich, supra,* 58 Ohio St.2d at 208, 12 O.O.3d at 202, 389 N.E.2d at 1117. Stated alternatively, in reviewing the court of common pleas judgment, the court of appeals, limited to a review of that judgment only on questions of law, can reverse if that judgment is against the manifest weight of the evidence. *Id.; In re Annexation of Riveredge Twp., supra,* 46 Ohio App.3d at 36, 545 N.E.2d at 1295–1296; *Sposit v. Strongsville* (Mar. 11, 1993), Cuyahoga App. No. 61926, unreported, at 5, 1993 WL 69536.

A

Appellants first argue that the trial court erred in affirming the BZA's decision to deny them a use variance to conduct their auto repair business at the subject property.

An automobile repair business is not a permitted use in a general retail business district. An automobile repair business is permitted in semi-industrial districts. See Cleveland Codified Ordinances 345.03(C)(2). A repair garage is defined as "any building or part thereof in which the general repair of any kind is performed on motor vehicles." Cleveland Codified Ordinances 325.30.

Cleveland Codified Ordinances 329.03 controls the BZA's power to grant a variance as follows:

"(a) *Conditions Requiring Variances.* Where there is practical difficulty or unnecessary hardship in the way of carrying out the strict letter of the provisions of its Zoning Code, the Board of Zoning Appeals shall have the power, in a specific case, to vary or modify the application of any such provisions in harmony with the general purpose and intent of this Zoning Code so that public health, safety, morals and general welfare may be safe-guarded and substantial justice done.

"(b) *Limitation of Variance Powers.* Such variance shall be limited to specific cases where:

"(1) The practical difficulty or unnecessary hardship inheres in and is peculiar to the premises sought to be built upon or used because of physical size, shape or other characteristics of the premises or adjoining premises which differentiate it from other premises in the same district and create a difficulty or hardship caused by a strict application of the provisions of this Zoning Code not generally shared by other land or buildings in the same district;

"(2) Refusal of the variance appealed for will deprive the owner of substantial property rights; and

"(3) Granting of the variance appealed for will not be contrary to the purpose and intent of the provisions of this Zoning Code.

"(c) *Data on which Variance is Based.* When appealing for a variance, the appellant shall state and substantiate his claim that the three conditions listed under subsection (b) hereof exist, and the Board shall make a finding on each of the three conditions as they apply in each specific case as a prerequisite for the granting of the variance."

In *Consol. Mgt., Inc. v. Cleveland* (1983), 6 Ohio St.3d 238, 6 OBR 307, 452 N.E.2d 1287, the Ohio Supreme Court interpreted the above ordinance and held:

"It is necessary that the board of zoning appeals read, and apply, each subsection of Ordinance Section 329.03 *in pari materia.* Accordingly, in order for the board to grant a specific variance, subsections 329.03(b)(1), (2) and (3) require that each applicant prove that the zoning classification presents an unnecessary hardship or practical difficulty to the intended use of the property;

that refusal of the variance will deprive the owner of substantial property rights; and that the granting of the variance would not be contrary to the intent of the zoning code. Here, we hold that the appellees have not sustained the burden of proving that they were entitled to the variance." *Id.* at 242, 6 OBR at 310–311, 452 N.E.2d at 1291.

As noted above, it is the applicants' burden to present evidence that they are entitled to a variance from strict application of the zoning code. In consideration of the above requirements, the BZA made four essential factual findings in support of its decision.

The BZA first found that a "nonpermissible use" in the form of a tire sales and installation and auto repair business has occupied the premises since 1962. We believe this finding is against the preponderance of substantial, reliable and probative evidence in the record. The record demonstrates that in 1962, the property was used by the Lesser & Lesser Firestone Company as a retail tire store while the back of the building was used for installation of said tires. Additionally, the Lessers had obtained all necessary city building and use permits and had spent considerable sums to upgrade the building and install five service bays and five overhead garage doors. Indeed, the BZA's secretary, Costanza, testified that the Firestone dealership, being a retail outlet for the sale of tires and attendant installation services, was a permissible use. Subsequently, in 1983, the tire store was sold and the property used as a store for the sale and installation of auto security systems. Again, all necessary city permits were issued, and Costanza testified that this was a permissible use.

Under Cleveland's Zoning Code, Section 343.11(b)(2)(E) broadly permits "the sale of other goods or merchandise" in a general retail business district. In addition, Section 343.11(b)(2)(Q) provides for "any accessory use customarily incident to a use authorized by this section * * *." The retail sales of tires and/or automotive security systems and the attendant installation services are clearly permitted and accessory uses in general retail business districts in the city of Cleveland. The historical use of the premises since 1962 and the fact that the city itself issued permits allowing for such uses underscores appellants' argument that such prior uses are permitted. Thus, the BZA's finding that the present property was being subjected to an illegal use for thirty years is not supported by the record and is against the manifest weight of the evidence.

The BZA's second finding states that "no exceptional local condition exists in this vicinity to justify the Board in making the exception requested." Appellants surmise that this is probably the BZA's attempt to make a finding on whether a "practical difficulty or unnecessary hardship inheres in and is peculiar to the premises * * * not generally shared by other land or buildings in the same

district." Cleveland Codified Ordinances 329.03(b)(1). We are inclined to agree and note that the BZA's fourth finding also addresses this issue.

In any event, appellants argue that the unique structure of the building, which includes the garage area, prevents the building from being used for other permissible uses. Moreover, the historical use of the premises, and the city's acquiescence in such use from 1962 to 1988 as a retail business for the sale of tires and/or automotive security systems underscores appellants' position that the building cannot be used for purposes other than those attendant to the automotive industry. However, the fact that the premises were used in connection with the automotive industry does not equate with practical difficulty or unnecessary hardship where there is no evidence that the building cannot be used consistently with its prior uses. There was no evidence presented that the building could not continue being used for the retail sale of automotive accessories, such as the sale and installation of tires and/or automotive security systems.

For the same reason, it is not clear that appellants are likely to suffer practical difficulty and/or an unnecessary hardship by not being granted the variance to conduct an automobile repair shop as that term is defined in Cleveland Codified Ordinances 325.30. As mentioned, this is consistent with the conclusion in the BZA's fourth finding which, in effect, states that appellants will not suffer an unreasonable hardship since they are not being denied use of property not also being denied other owners similarly situated. The evidence discloses that appellants can use the property for retail sale of items related to the automobile industry. The record reflects that since 1962 the building has permissibly been used for the retail sale of automotive accessories and attendant automotive services. In short, while the structure of the building is uniquely suited for the automotive services industry, there is nothing in the record which suggests that the building cannot be used consistently with its limited prior uses, as opposed to the expanded use of permitting the general repair of any kind of automobiles.

Appellants' additional argument that if the property cannot be used as an automobile repair shop, the property will have to be boarded up is also unpersuasive. Appellants pleaded before the BZA that it is nearly impossible to lease the building for something other than automobile services due to the unique structure of the building and due to the heavy population of bars which contribute to the deterioration of the property (and the neighborhood) and discourage other forms of retail or business establishments from entering the neighborhood. Again, however, appellants offer no evidence as to why the property cannot be leased for other types of automotive sales businesses, with attendant installation services, as had been done in the past. This court is mindful that it is appellants' responsibility to produce evidence of practical difficulty and undue hardship. *Consol. Mgt., Inc., supra,* 6 Ohio St.3d at 242, 6 OBR at 310–311, 452 N.E.2d at 1291; *Susman*

*v. Cleveland Bd. of Zoning Appeals* (May 12, 1988), Cuyahoga App. No. 53771, unreported, at 2, 1988 WL 47462.

Additionally, the record fails to disclose that appellants would be deprived of a substantial property right granted others similarly situated within the district. The evidence demonstrates that Rink's Auto Repair, a former service station which removed its gas pumps and no longer sells gasoline, is permitted to conduct minor car repairs and provide other automotive services, in the same general retail business district. In fact, Rink's Auto repair is a neighbor, and competitor, of appellants' business. However, Rink's Auto Repair operates as a service station, although it no longer engages in the retail sale of gasoline, which is a permitted use within a general retail business district. Moreover, Rink's Auto Repair is limited to conducting minor automobile repair services as are permitted at service stations. See *infra.*

Finally, appellants argue that the BZA's third finding is not supported by the record. The BZA's third finding states, in effect, that granting the appeal would be detrimental to the general welfare of the neighbors and to the value of their properties and contrary to the purpose and intent of the zoning code. It is undisputed that appellants did not maintain the property, as there was evidence of grease stains on the sidewalk and broken glass and bottles on the property. Mr. Spendel registered complaints over the grease and oil stains on the sidewalk, used parts cluttering up the property, loud noises, and cars being parked on the sidewalk.

Appellants argue that Councilman Polensek's testimony supports their contention that the purpose and intent of the zoning code would be served by granting the variance. They point out that Councilman Polensek did not oppose the type of business being run from the premises but that he opposed only the way in which the business was being run. Appellants add that various other types of automotive service businesses, such as service stations (Cleveland Codified Ordinances 343[b][2][I][5] ), service garages (343.11[b][2][I][1] ), and public garages (343.11[b][4] ) are permitted in general retail business districts.

It is not contested that a service station may engage in light automotive repairs. However, it is also important to note that automotive repairs at an automobile repair shop (as opposed to minor automotive repairs at a service station) may involve heavier work, which contributes to the greater incidence of loud noises, the potential for heavier spills of gas and oil, and the greater likelihood of spare and used parts cluttering up the premises. As gleaned from the record, these potential hazards were apparently being realized from the way in which appellants ran their automotive repair shop and certainly may cause the BZA to conclude that granting a variance to allow appellants to operate an

automotive repair shop where any type of automobile repair work could be done would be contrary to the purpose and intent of the zoning code.

Thus, from the record, we conclude the trial court did not err in affirming the BZA's decision denying appellants' request for a variance. As a matter of law, the preponderance of reliable, probative and substantial evidence supports the BZA's decision to deny appellants a variance to conduct automobile repair work as permitted in a repair garage as that term is defined in Cleveland Codified Ordinances 325.30.

## B

■ In the alternative, appellants argue that the trial court erred in affirming the BZA's denial of an occupancy permit. Appellants contend that their automotive repair shop falls within the definition of "service station," which is a permissible use in a general retail business district. Cleveland Codified Ordinances 343.11(b)(2)(I)(5). As previously stated, Section 325.60 defines "service station" as follows:

" 'Service station' means a use of premises primarily for the retail sale of gasoline or other motor vehicle fuels and oil for delivery into automotive vehicles, and may include the retail sale of lubricants, tires, batteries and automotive accessories; the rendering of services and the making of adjustments and replacements to motor vehicles; the washing, waxing and polishing of motor vehicles as incidental to other services rendered; the washing of motor vehicles with self-service coin operated equipment without an independent structure therefor; and the making of repairs to motor vehicles except repairs of a major type which are defined to be spray painting, body, fender, clutch, transmission, differential, axle, spring and frame repairs, major overhauling of engines requiring the removal of engine cylinder head or crankcase pan, repairs to radiators requiring the removal thereof or complete recapping or retreading of tires."

Appellants contend that pursuant to the above ordinance, the following five types of business fall within the scope of the term "service station":

1. Retail sale of gasoline, and the incidental sale of other automotive supplies;

2. Services to motor vehicles, including "adjustments and replacements";

3. Washing, waxing and polishing of motor vehicles, as "incidental" to other services rendered;

4. Washing of motor vehicles, with self-service coin operated equipment without an independent structure therefor; and

5. Making repairs to motor vehicles, which are not repairs of a "major type" as that term is defined in Section 325.60.

The city, on the other hand, argues that "service station" contemplates use of the premises primarily for the retail sale of gasoline or other motor vehicle fuels and oil for delivery into automotive vehicles. Going further, the city contends that other incidental services, such as the making of minor repairs to motor vehicles, are permitted so long as the service station engages primarily in the retail sale of gasoline or other motor vehicle fuels.

While we find merit to the city's interpretation of Cleveland Codified Ordinances 325.60 and conclude appellants' auto repair shop does not fall within the definition of a service station, we believe this court's decision in *Std. Oil Co. v. Cleveland* (Mar. 19, 1981), Cuyahoga App. No. 42537, unreported, is controlling. In *Std. Oil,* plaintiff appealed the decision of the common pleas court, which reversed the BZA's decision granting it a permit to operate a service station. Plaintiff had operated a service station since 1958 but removed its gas pumps and, in 1979, sought an operating permit to allow it to operate as a "minor repair" garage. As in the present case, the plaintiff in *Standard Oil* had legally operated a business in conformance with the zoning code but discounted its main use, *i.e.,* the sale of gasoline, and attempted to continue to operate by performing a use which had been previously permitted only as an ancillary service, *i.e.,* performing minor repair work on automobiles.

In interpreting Cleveland Codified Ordinances 325.60, this court wrote:

"Evidence presented to the Board, unrebutted by the City, discloses that Stewart proposes to provide the kinds of minor repair services permitted to be part of the general operation of a service station, but simply will not be selling gasoline to his customers. In other words, what was an ancillary service of Sohio would become the sole service of Stewart.

"The City, on the other hand, cites other ordinance provisions to support its argument that by discontinuing gasoline sales and performing *only* automobile repairs, albeit minor, Stewart will create a semi-industrial use.

"Ordinance Section 345.03(C)(2) includes as an 'additional commercial and semi-industrial use' a 'repair garage for repair or painting of automobiles.'

"Ordinance Section 325.60 defines a 'repair garage' as any 'building or part thereof in which a general *repair of any kind* is performed on motor vehicles.' (Emphasis added.)

"In effect, the City concludes that by no longer pumping gas, while continuing the previously allowed minor repair services, Stewart will *ipso facto* be broadening the uses of the property, converting what was formerly a local retail use to a semi-industrial use, and thereby creating a 'greater nonconformity' in use which would be 'more objectionable.'

"We disagree. In reviewing the evidence presented in the hearing before the Board, and the language expressly incorporated by the Board in issuing the permit, we find that the appellant would be performing the same limited repair work that Sohio was authorized to do. Unrebutted testimony indicates that Stewart would actually be continuing the prior use of repair and not expanding it as the City has argued." *Id.* at 5–6.

As in *Std. Oil,* a review of the record reveals that appellants' premises has been historically operated in conformance with the zoning code, but now appellants no longer seek to engage in the retail sale of tires and/or automotive security systems. Instead, appellants seek to use the premises for the sale of automobile parts and accessories as well as the repair of automobiles. Moreover, the type of work sought to be done at appellants' automobile repair business would be the type of limited repair work permitted to be done at a "service station" and would be the type of ancillary services previously performed at the premises in question as part of the business of providing for the retail sale of tires and/or automobile security systems. In other words, what was an ancillary service of the Lesser & Lesser Firestone tire store or the Chapman Automotive Security System store, *i.e.,* the attendant services of installing the merchandise provided at the store, would become the sole service of Mobasseri and Khodabandlou, *i.e.,* minor repair work and servicing of automobiles. The present case is, therefore, indistinguishable from *Std. Oil, supra.*

First, Mr. Gaeta stated that appellants' operation is "mechanical repairs, tuneups, brakes, lubes, et cetera." Appellants' application for an occupancy permit states further that the business involves the "repair of automobiles, including but not limited to tune-ups, brakes, exhaust systems, shock absorbers, and tires." Finally, appellants' counsel represented that appellants operated "a repair, restorage garage." Thus, the evidence before the BZA demonstrates that the minor automobile repair work to be performed at appellants' business falls within the realm of minor repair work permitted as an ancillary service at a service station. Moreover, it is difficult for this court to imagine how a service station which engages in the additional service of retail sale of gasoline and other fuels, in addition to the minor repair work permitted at a service station, is less objectionable than a business as the one proposed by appellants, which does not engage in the retail sale of gasoline and other fuels but does engage in the minor repair work otherwise permitted at a service station.

However, the BZA could have been concerned when appellants' counsel acknowledged that appellants "may have done one or two transmissions, and [they] may have done, in the past, one to two motor jobs." As previously stated, a service station is prohibited from conducting "major type" repairs, which include "transmission * * * repairs, [and] major overhauling of engines." Nonetheless,

counsel's forthright acknowledgement of what had happened in the past with respect to appellants' operation of their business should not impact upon appellants' rights to an occupancy permit when they seek to use the premises, in a lawful fashion, as a place where minor repair work is performed. We emphasize that any occupancy permit issued to appellants should be limited to the performance of minor automobile repairs as such are permitted at a service station as defined in Cleveland Codified Ordinances 325.60. Moreover, this opinion should not be read to prohibit lawful city authorities from exercising their rights to prevent any unauthorized uses attendant to the issuance of an occupancy permit. See Cleveland City Ordinances 327.02 (enforcement; permits and certificates); 327.03 (legal action by Director of Law); and 327.99 (penalties).

Therefore, we conclude that the trial court erred in affirming the BZA's decision denying appellants' request for an occupancy permit. As a matter of law, this court finds that the BZA's decision denying appellants' application for an occupancy permit in order to operate as an auto repair shop where minor automobile repairs are performed is against the manifest weight of the evidence. The record before this court indicates that appellants' proposed use of the premises, *i.e.*, as an automobile repair shop where the type of minor repairs permitted at a service station are to be performed, is permitted as an ancillary use at a service station and/or as incidental services at a retail store for the sale of automobile accessories. In either case, such is permitted in a general retail business district. The BZA should have, therefore, granted appellants an occupancy permit.

## C

In sum, this court concludes that the trial court did not err in affirming the BZA's decision to deny appellants' application for a zoning variance. However, we also conclude that the trial court erred in affirming the BZA's decision to deny appellants an occupancy permit in order to conduct limited, minor repair services which are permitted to be conducted at service stations as that term is defined in Cleveland Codified Ordinances 325.60.

Appellants' sole assignment of error is sustained in part.

The judgment of the common pleas court is reversed and remanded for further proceedings consistent with this opinion.

*Judgment reversed*
*and cause remanded.*

SPELLACY, P.J., and NAHRA, J., concur.