K–MART CORPORATION, Appellant,

v.

CITY OF WESTLAKE, CITY COUNCIL, et al., Appellees.

[Cite as K–Mart Corp. v. Westlake City Council (1997), 121 Ohio App.3d 630.]

Court of Appeals of Ohio,
Eighth District, Cuyahoga County.

No. 69953.

Decided July 21, 1997.

*Taft, Stettinius & Hollister, Timothy J. Grendell* and *Mark A. Ferguson*, for appellant.

*David M. Lynch,* Westlake Director of Law, and *Robin R. Leasure,* Assistant Director of Law, for appellees.

*Bryan P. O'Malley,* Westlake City Prosecutor; *Mansour, Gavin, Gerlack & Manos, Michael T. Gavin* and *Eli Manos; Rademaker, Matty, McClelland & Greve* and *Robert C. McClelland,* for appellees city of Westlake and Westlake City Council.

PATRICIA ANN BLACKMON, Presiding Judge.

K–Mart Corporation, plaintiff-appellant, appeals a trial court's decision affirming an administrative ruling from the city of Westlake, defendant-appellee, that denied its application to use its property for a two-hundred-thousand-square-foot "super store." K–Mart assigns the following errors for our review:

"I. The trial court erred to the extreme prejudice of appellant K–Mart Corporation ('K–Mart') when it based its affirmance of the city of Westlake's (the 'city') denial of K–Mart's development plan on a non–codified 'guide plan' which was not part of the record.

"II. The trial court erred, to the extreme prejudice of K–Mart, by finding that the city's uncodified guide plan somehow overrode or altered the shopping center use permitted by the city's subsequent codified zoning code and zoning map.

"III. The trial court erred to the prejudice of K–Mart by holding that 'the inadequate storm sewer protection is supported by the record' when the unrebutted evidence in the record conclusively established that K–Mart's storm sewer protection plan 'will meet or exceed city ordinances and the requirements of Chapter 111 of the [Westlake] Code.'"

Westlake cross-appeals and raises the following assignment of error:

"The trial court erred by finding that the traffic concerns raised by Westlake did not support Westlake's denial of K–Mart's development plan."

After reviewing the record and the argument of the parties, we affirm the decision of the trial court. Since we affirmed the trial court's ruling, we conclude that Westlake's assigned error is moot. The apposite facts follow.[1]

---

1. These facts were taken from an opinion of this same case written by Judge Sara J. Harper before she retired on February 12, 1997. Because her opinion in this case was released and journalized on February 13, 1997, it gave an appearance that her authored decision was written after her retirement. Although it appears that way, the facts are clear that her panel

On February 10, 1993, K–Mart purchased a thirty-two-acre tract of property located on Center Ridge Road in Westlake for $4.5 million. Since 1960, the property had been zoned for a shopping center. On February 16, 1993, K–Mart submitted a development plan ("K–Mart I") for the property to the planning commission. A 1992 traffic study, "Traffic Pro," which had been prepared by the property's previous owner, Bucky Kopf, accompanied K–Mart I.

K–Mart I was submitted to Robert Parry, Westlake's Director of Planning and Economic Development, for a departmental review. Parry reviewed K–Mart I and prepared a memorandum and a "Box Score Sheet." The Box Score Sheet documented K–Mart's compliance with Westlake's Zoning Code requirements applicable to shopping centers. Subsequently, the discussion of K–Mart I was placed on the planning commission's agenda for March 15, 1993.

Prior to Westlake Planning Commission's March 15, 1993 meeting, K–Mart submitted a development study and a second traffic study ("1993 Traffic Pro Study") in response to the comments by the commission, Westlake's city engineer and police chief, and a proposal by URS Consultants to provide Westlake with an independent traffic study. Upon the planning commission's suggestion to conduct a "work session" on March 29, 1993, K–Mart withdrew K–Mart I from the March 15, 1993 agenda. The work session that proceeded on the planned date consisted of a presentation by K–Mart representatives and the opportunity for residents to voice concerns. Parry shared the concerns of Westlake's city engineer to K–Mart by reading his March 29, 1993 interoffice memorandum and Box Office Sheet into the record. In the interoffice memorandum, dated March 29, 1993, Parry included comments from the city engineer regarding storm water sewer disposition for K–Mart's application. The comments read, in part:

"The City Engineer has raised a number of issues and concerns about the development of this site. The primary concern is the disposition of storm water from the site and the problem of Dover Ditch accepting more water west of Dover Center Road. This may require the installation of storm sewers and a new culvert on Dover Center as well as other off-site improvements to carry the water safely downstream."

K–Mart, on April 8, 1993, submitted a second application and development plan ("K–Mart II"), and resubmitted its original development study and the 1993 Traffic Pro Study. In an April 16, 1993 communication, the city advised K–Mart that it required additional information. Westlake retained URS Consultants to perform a traffic study as required by the city's zoning code; URS Consultants

---

decided the case before February 12, 1997, and she authored the opinion before that date. The incorrect date was placed on the journal entry by mistake. Therefore, we rescheduled the case for oral argument, and now issue this opinion.

presented its proposal to perform the traffic study on April 18, 1993. The city also elicited comments from its police chief, city engineer, and planning commission.

Prior to K–Mart II's submission, Westlake introduced and subsequently passed several ordinances regulating "large stores." Westlake then returned K–Mart II's application because K–Mart II did not conform to the newly enacted ordinances.

As a result of Westlake's failure to place K–Mart I and II on the planning commission's agenda, K–Mart filed a petition for a writ of mandamus in the Ohio Supreme Court. *State ex rel. Kmart v. Westlake Planning Comm.* (1994), 68 Ohio St.3d 151, 624 N.E.2d 714. K–Mart requested that the planning commission be ordered, as an administrative body, to place K–Mart I and K–Mart II on its agenda. The Supreme Court issued the requested writ and ordered Westlake to either approve or reject K–Mart's plans in accordance with the ordinances predating the "large store" ordinances. *Id.* at 153, 624 N.E.2d at 716–717.

Westlake and K–Mart, therefore, met to clarify K–Mart's application and to place the development plan on the planning commission's agenda. In January 1994, the planning commission began its review of K–Mart's plan. On March 15, 1994, Parry set forth his review of K–Mart's plans in an interoffice correspondence to the planning commission. The interoffice correspondence contains Parry's comments and concerns, in addition to a summary of the comments of other departments.

K–Mart then submitted an amended development plan ("K–Mart III"). It also forwarded a supplemental report by "Zaremba," the developer of K–Mart, an amended dedication plat, and an amended assembly plat. K–Mart sought and was granted an extension of time to present K–Mart III plans to the planning commission. The planning commission agreed to schedule a hearing for May 9, 1994.

On April 4, 1994, K–Mart submitted amendments to its development plan, its assembly plat, and its dedication plat, together with a third traffic study ("K–Mart IV"). The third traffic study was completed by a different traffic engineering firm, MS Consultants. Westlake circulated K–Mart IV to certain city departments for review and comment.

Westlake's city engineer, on or about April 19, 1994, provided his comments on K–Mart's revised plan. The comments that specifically related to storm water sewer disposition follow:

"5. It is recommended that the developer and their Engineer should *look at* additional off-site storm sewer alternatives to help reduce the impact of adding additional storm waters to the already over taxed Dover Ditch.

"\* \* \*

"9. It appears that the proposed retention basin will back up storm waters into the proposed City owned System in Jack Miner Drive reducing its ability to convey storm waters during certain storm events. Also the proposed catch basin near the N.W. Corner of the site may cause retention to back-up into the adjacent parcel."

Prior to the start of the May 9, 1994 planning commission meeting, K–Mart submitted supplemental materials. One of the supplements was a report prepared by Zwick Associates Engineers and Surveyors, the Zwick Report. The Zwick Report addressed the city engineer's concerns about the storm sewers.

The Zwick Report basically summarizes K–Mart's development for the Super Store. The report includes a summary of traffic improvements that were recommended by MS Consultants, K–Mart's proposed storm water management plans, the "Dover Ditch" storm water outlet "City Approval History," and a two-point synopsis regarding storm water backup. The summary regarding the storm water management system reads, in part:

## "STORM WATER MANAGEMENT

"1. The K–Mart site drains to the proposed storm Water Detention Basin. The Detention Basin will meet or exceed City ordinances and the requirements of Chapter 1111 of the Code, and is therefore intended to reduce the rate of runoff from the proposed development to two-thirds of the pre-development rate.

"2. The runoff from the K–Mart site will be restricted by a *10" pipe* as it leaves the Detention Basin. It will connect to the same storm sewer that drains the site today.

"3. The Detention Basin is designed to hold the required volume of storage in accordance with City ordinances and the requirements of Chapter 1111 of the Code as shown by calculations on the Development Plans.

"4. The outlet from the proposed Detention Basin is the same as the existing outlet which drains the site today, in accordance with the following history of City approvals."

The Zwick Report was read into the record of the planning commission's meeting. In addition, presentations were made by K–Mart's representatives and Westlake's traffic consultants, questions were asked by the planning commission, and the public was given the opportunity to present comments. The planning commission approved the assembly plat but recommended that Westlake City Council reject the dedication and K–Mart IV.

On May 19, 1994, the planning commission's report was presented at the Westlake City Council meeting. In response to recommendations by URS Consultants, K–Mart requested permission from Westlake City Council to amend its application. Consequently, on July 7, 1994, K–Mart submitted correspondence to the city council, after which it voted to adopt the planning commission's recommendation that approved the assembly plat but rejected the dedication plat and K–Mart IV.

K–Mart appealed Westlake City Council's denial of K–Mart IV to the Cuyahoga County Court of Common Pleas pursuant to R.C. Chapter 2506. On November 15, 1994, the common pleas court upheld Westlake City Council's decision denying K–Mart IV.

K–Mart raises the following arguments: the trial court erred when it relied on Westlake's "Guide Plan" because it was not a part of the record; the trial court erred when it used the Guide Plan as a basis for denying K–Mart's use application; and the trial record does not support the trial court's finding that K–Mart's Storm Sewer Protection Plan was inadequate. This case rests on whether the area K–Mart wants to use to create its super store is sufficient under Westlake's regulations to sustain the store. Westlake, on the basis of its Guide Plan and its zoning laws, says K–Mart cannot use the land in this manner. The trial court affirmed Westlake's use restriction, and we agree.

This court reviews the trial court's ruling under R.C. Chapter 2506 under the standard of discretionary review. *Kisil v. Sandusky* (1984), 12 Ohio St.3d 30, 12 OBR 26, 465 N.E.2d 848. Thus, our concern is whether as a matter of law the trial court has abused its discretion. *Id.* An abuse of discretion exists when the trial court acts unreasonably, arbitrarily, or unconscionably. *Id.* at 34, 12 OBR at 29–30, 465 N.E.2d at 851–852; *Blakemore v. Blakemore* (1983), 5 Ohio St.3d 217, 219, 5 OBR 481, 482, 450 N.E.2d 1140, 1142.

Thus, our function is not to weigh the evidence. *Dudukovich v. Lorain Metro. Hous. Auth.* (1979), 58 Ohio St.2d 202, 12 O.O.3d 198, 389 N.E.2d 1113. Our inquiry is whether as a matter of law we can say that there exists a preponderance of reliable, probative, and substantial evidence to support the trial court's finding in Westlake's favor. Having examined the record, we conclude that the trial court did not abuse its discretion in ruling in Westlake's favor.

K–Mart argues that the Guide Plan is an eighty-eight-page document that Westlake uses in conjunction with its zoning code and that it is referred to in the zoning code by reference. Also, the Guide Plan was attached to Westlake's trial brief. It is clear from the record that the Guide Plan was not physically a part of the administrative record itself. However, there is no evidence that the planning

committee did not refer to it. In fact, all of the evidence implies that it relied heavily on the Guide Plan.

During oral argument, K–Mart's lawyer was asked whether the trial court could take judicial notice of the Guide Plan, since it is referred to in the zoning code and was attached to Westlake's trial brief. He responded that the trial court could take judicial notice and for that matter so could we.

Besides, if the transcript does not include all the evidence that was presented to the planning commission, then the trial court shall hear the appeal upon the transcript and such additional evidence as may be introduced by either party. R.C. 2506.03(A)(5); *Schoell v. Sheboy* (1973), 34 Ohio App.2d 168, 63 O.O.2d 285, 296 N.E.2d 842. Introduction by way of the brief is sufficient. Therefore, the trial court did not abuse its discretion. K–Mart's first assigned error lacks merit.

■ In its second assigned error, K–Mart argues that the trial court erred as a matter of law when it gave the Guide Plan the force of law. K–Mart specifically argues that Westlake is prohibited from restricting its use of property with an uncodified Guide Plan. We disagree. The record shows by the zoning ordinance that Westlake's Guide Plan is incorporated into it by reference. Zoning Code Section 1201.01 reads as follows:

"This Zoning Code is intended to achieve, among others, the following objectives:

"(a) To protect the character and values of residential, institutional and public uses, business and industrial issues, and to insure their orderly and beneficial development;

"(b) To provide adequate open spaces for light, air and outdoor uses;

"(c) To prevent overcrowding of the land;

"(d) To prevent excessive concentration of population;

"(e) To regulate and control the location and spacing of buildings on the lot and in relation to the surrounding property *so as to carry out the objectives of the Guide Plan;*

"(f) To regulate the location of buildings and intensity of uses in relation to streets so as to minimize interference by traffic movements and reduce street congestion and improve public safety;

"(g) To establish zoning patterns that insure economical extension for sewers, water supply, waste disposal and other public utilities, as well as developments for recreation, schools and other public facilities;

"(h) To guide the future development of the City to bring about the gradual conformity of land and building uses *in accordance with the objectives of the Guide Plan;*

"(i) To accomplish the specific intents and goals set forth in the introductions to the respective chapters" (Emphasis added.)

K–Mart argues that the Guide Plan is not law. For this position it cites *Kanareff v. Westlake* (Apr. 16, 1992), Cuyahoga App. No. 60076, unreported, 1992 WL 79850; and *Hydraulic Press Brick Co. v. Independence* (1984), 16 Ohio App.3d 204, 16 OBR 219, 475 N.E.2d 144. Both cases do not apply to this case.

In *Kanareff,* this court stated that the "appellants did not attack the 'Guide Plan' but the ordinance." In *dicta* it went on to state that the ordinance is the law, and the Guide Plan is a guide, citing *Cent. Motors Corp. v. Pepper Pike* (1979), 63 Ohio App.2d 34, 13 O.O.3d 347, 409 N.E.2d 258. This court went on to state that the Guide Plan has not been given the force of law. In neither *Cent. Motors* nor *Kanareff* was the trial court faced with the issue of whether the Guide Plan is by reference incorporated into Westlake's zoning law. We have concluded that it is and may be used by the trial court in its determination.

In *Hydraulic Press Brick,* the issue involved the city's master plan. This court said, "The city could properly consider whether a requested *variance* was consistent with such a general plan." (Emphasis *sic.*) *Id.,* 16 Ohio App. 3d at 208, 16 OBR at 223, 475 N.E.2d at 148. This court in *Hydraulic Press Brick* placed some weight on the fact that the master plan had been enacted. *Hydraulic Press Brick* does not say that it has to be enacted before it can be used. In fact, under *Hydraulic Press Brick's* reasoning, it could be incorporated by reference and have full force as was the case here.

The Guide Plan is an eighty-eight-page document, which sets forth the goals of Westlake regarding land use. It is incorporated in the codified zoning law by reference. Thus, when the plan is specific in its goals, and used in addition and in concert with the law of the city, the city may use the plan to oppose a use permit. In *Hydraulic Press Brick,* the city's master plan contradicted the city's zoning code. Here, the Guide Plan and the zoning code work in tandem. Consequently, we conclude that the trial court did not abuse its discretion when it relied on the Guide Plan. Accordingly, K–Mart's second assigned error lacks merit.

 In its third assignment of error, K–Mart[2] contends that the trial court erred to the prejudice of K–Mart by holding that "[t]he inadequate storm sewer

---

2. We adopt and incorporate this portion of Judge Sara J. Harper's opinion as we did with the facts.

protection is supported by the record," when the unrebutted evidence in the record conclusively establishes that K–Mart's storm sewer protection plan "will meet or exceed City ordinances and the requirements of Chapter 1111 of the [Westlake] Code." K–Mart argues that it addressed Westlake's concern regarding the storm water sewer plan during the administrative process. Specifically, the Zwick Report demonstrated that K–Mart's water retention plan would meet or exceed the applicable ordinances. Moreover, K–Mart submits that it agreed to implement whatever revisions were necessary to remedy Westlake's concerns regarding the storm sewer protection plan. Finally, according to K–Mart, Section 1220.04 of Westlake's Zoning Code provides K–Mart with the opportunity to correct deficiencies in its development plan and Westlake failed to articulate the manner in which K–Mart's plan was not in compliance.

Westlake, on the other hand, counters that K–Mart's contention should be rejected in light of the evidence contained in the record before this court. According to Westlake, K–Mart failed to satisfy its concerns relative to the storm water sewer. Specifically, Westlake argues that K–Mart failed to offer evidence to support its assertion that its storm sewer protection plan meets the requirements of Chapter 1111 of Westlake's Codified Ordinances with regard to storm sewer drainage. Therefore, the evidence supports the trial court's decision.

It is well-settled law in Ohio that judgments supported by some competent, credible evidence going to all the essential elements of the case will not be reversed by a reviewing court as being against the manifest weight of the evidence. *C.E. Morris Co. v. Foley Constr. Co.* (1978), 54 Ohio St.2d 279, 8 O.O.3d 261, 376 N.E.2d 578. Every reasonable presumption must be made in favor of the judgment and the findings of fact. *Seasons Coal Co. v. Cleveland* (1984), 10 Ohio St.3d 77, 10 OBR 408, 461 N.E.2d 1273; *Shore, Shirley & Co. v. Kelley* (1988), 40 Ohio App.3d 10, 531 N.E.2d 333.

Section 1220.04 of Westlake's Zoning Code states:

"The Director of planning shall notify the applicant of deficiencies in the submitted plan, compliance to the Zoning Code or other codes of the City, other department concerns and make recommendations which would improve the development plan. Recommendations by the director of planning are not exclusive or final. The Planning Commission may make additional recommendations or modifications as provided in section 1220.05. After department review, the applicant may submit revised or amended plans to the Department for submission to the Planning Commission."

Chapter 1111 of Westlake's Codified Ordinances pertains to the requirements for storm sewer drainage to which all development projects must comply. Section 1111.01(a) requires that a development project must provide, design, and

construct storm drainage systems using on-site or off-site retention basins and/or underground storage facilities that will reduce the developed storm waste runoff from the development to two-thirds of existing undeveloped storm water runoff. Appendix I to Chapter 1111 sets forth a design procedure with which all new development projects must comply. Appendix I provides the maximum discharge rate and a formula to determine the maximum discharge rate for any on-site retention basin.

Central to the resolution of this assignment of error is whether there was reliable and substantial evidence to support the trial court's finding that K–Mart's storm water sewer protection plan did not meet or exceed the applicable Westlake ordinances. Based upon our review of the record, we find that the record supports the trial court's ruling that K–Mart did not meet the requirements of Chapter 1111 of Westlake's Codified Ordinances with regard to the water sewer discharge requirement.

A review of the evidence in the case at bar indicates that Westlake's concerns and issues relative to storm water sewer disposition resulting from K–Mart's development plan were well documented. A March 29, 1993 Westlake interoffice memorandum from Parry to the planning commission includes Westlake's city engineer's comments concerning K–Mart's plan with respect to storm water disposition. The city engineer's comments read, in part, as follows:

"The primary concern is the disposition of storm water from the site and the problem of Dover Ditch accepting more water west of Dover Center Road. This may require the installation of storm sewers and a new culvert on Dover Center as well as other off-site improvements to carry the water safely downstream."

Parry, in a letter dated July 29, 1993, shared the Westlake's city engineer's concerns with Mr. Scott of Zaremba, the corporation overseeing K–Mart's development plan relative to storm water sewer disposition. In part, Parry's remarks read:

"8. The City Engineer has previously raised concerns over sanitary and storm drainage and other off-site improvements that may be required and are not shown or identified."

On February 2, 1994, at a meeting at Parry's office, K–Mart's counsel was informed that K–Mart's storm sewer plan did not meet the applicable Westlake ordinances.

An April 19, 1994, city engineer's memorandum contains comments with respect to the storm water sewer disposition. The Westlake City Engineer's comments read, in part:

"1. It is suggested that the plan be referred to the Sanitation Committee for their review and recommendations. Sanitary sewers along Center Ridge are

supposed to service this site and elimination of this alignment will leave approximately 7 parcels of property on the north side of Center Ridge without sanitary facilities.

"* * *

"5. It is recommended that the developer and their Engineer should look at additional off-site storm sewer alternatives to help reduce the impact of adding additional storm waters to the already overtaxed Dover Ditch.

"* * *

"9. It appears that the proposed retention basins will back up storm waters into the proposed City owned System in Jack Miner Drive reducing its ability to convey storm waters during certain storm events. Also the proposed catch basin near the N.W. corner of the site may cause retention to back-up into the adjacent parcel."

To address Westlake's concerns relative to storm sewer water disposition, K–Mart's counsel submitted a letter dated May 9, 1994, which stated, "The attached remarks may be used in response to the City Engineer's various drainage comments." The attached remarks consisted of the Zwick Report.

At the May 9, 1994 Planning Commission hearing, K–Mart presented the Zwick Report in response to Westlake's concerns relative to the sewer storm water disposition. With respect to the storm water disposition, the Zwick Report indicates:

"1. The K–Mart site drains to the proposed storm water Detention Basin. The Detention Basin will meet or exceed City ordinances and the requirements of Chapter 1111 of the Code, and is therefore intended to *reduce* the rate of run-off from the proposed development to two-thirds of the pro-development rate."

The record indicates that the Zwick Report was incorporated into the record of the May 9, 1994 hearing. In addition, Zwick was present at the hearing. The transcript of the May 9, 1994 hearing indicates that neither the planning commission nor Westlake's city engineer posed questions relative to the contents of the Zwick Report.

At a meeting on February 2, 1994, Westlake informed K–Mart that storm sewer drainage for the proposed development did not meet Chapter 1111 requirements. K–Mart, in turn, sent a letter in response from Zwick Associates to address Westlake's concerns. K–Mart submits that the evidence and recent case authority demonstrate that the trial court's ruling was erroneous.

K–Mart cites *Pawuk v. Cleveland Bd. of Zoning Appeals* (June 22, 1995), Cuyahoga App. No. 67883, unreported, 1995 WL 371318; *Whiteco Metrocom, Inc. v. Columbus* (1994), 94 Ohio App.3d 185, 640 N.E.2d 563, and *Lesser v. Cleveland*

(1995), 102 Ohio App.3d 151, 656 N.E.2d 1301, to lend support to its proposition that when a land-use application complies with a city's zoning ordinance, a decision by the trial court affirming a municipality's denial of the land-use application is "unsupported by the evidence as a matter of law," when the evidence shows that the municipality either failed to respond to or critique the land-use application. Applying *Pawuk, Whiteco,* and *Lesser* to the facts of the case *sub judice,* K–Mart contends that the trial court's ruling affirming West-lake's denial of K–Mart's application is erroneous because Westlake failed to respond or dispute the evidence offered by K–Mart.

This court has reviewed *Pawuk, Whiteco,* and *Lesser.* We find them to be distinguishable from the issue at bar, *i.e.,* whether the evidence in the record supported the trial court's determination that K–Mart IV did not meet the pertinent Westlake code requirements.

In *Pawuk,* appellants Pawuk and Pinky's Saloon appealed the trial court's decision affirming the Cleveland Board of Zoning Appeals' ("BZA") denial of an application for a sign permit and building permit for the repair of an existing sign. The dispute in *Pawuk* centered on the size of the sign. The sign failed to comply with the size requirements in the Cleveland Codified Ordinances.

At trial, Pinky's Saloon's operator testified that the sign had existed since at least 1986 and that the permit history contained a permit for the sign. Thus, the sign was a nonconforming use. The BZA countered that the evidence failed to demonstrate that the sign existed before the 1990 enactment. However, Pinky Saloon's operator's testimony about the existence of the sign was uncontroverted.

Upon review of the record, this court found that there was insufficient evidence supporting the BZA's determination. This court held that the trial court's decision to affirm the zoning appeals board's decision was not supported by evidence as a matter of law with respect to the denial of the application for the building permit to repair the existing sign. We thus affirmed the trial court's decision with respect to the application for a sign permit.

We find that the case at bar does not involve a factual scenario analogous to *Pawuk.* The issue in this assignment of error is whether the record supports the trial court's finding that K–Mart failed to submit sufficient evidence showing that its storm water plan met the applicable Westlake zoning ordinances. Given the facts of the case, we do not find *Pawuk* to be dispositive.

In *Whiteco,* appellee Whiteco applied for a permit to construct a billboard at the intersection of Selzer Road and Airport Connector Boulevard in Columbus, Ohio. Whiteco was issued a permit and constructed a billboard. Integral to the dispute was a copy of the schematic plan for I–670 which designated the "funding

line." The funding line designated the amount of federal funding for portions of a roadway.

Subsequently, Whiteco was informed by the city of Columbus that the billboard's location was considered part of the interstate system. Thus, the city ordered the removal of Whiteco's billboard. Whiteco appealed the removal to the city of Columbus Graphics Commission. The Graphics Commission affirmed the removal. Whiteco appealed the Graphics Commission's ruling to the Franklin County Court of Common Pleas, which ruled in favor of Whiteco.

The city of Columbus appealed to the Franklin County Court of Appeals. The city of Columbus argued that the location of the billboard was part of the interstate system. Therefore, the trial court erred when it ruled that the city was estopped from revoking a billboard permit.

The Franklin County Court of Appeals held that the lower court correctly determined that the gravamen of the appeal was the interpretation and application of the term "interstate," that the trial court was correct in determining that the city was estopped from revoking the validly issued permit, that the initial issuance of the permit was not legally authorized, and thus that the doctrine of estoppel was not available to Whiteco. The Franklin County Court of Appeals rejected the city's argument that the lower court erred when it concluded that the Graphic Commission's decision was not supported by a preponderance of evidence, and affirmed the trial court's decision.

We find that *Whiteco* is distinguishable from the facts of the case at bar and fails to illuminate the issue in this appeal for the following reasons: first, the case *sub judice* involves neither permit revocation nor the interpretation of terms/ words in the applicable zoning ordinance; second, K–Mart did not raise on appeal an equitable estoppel claim. In light of the aforementioned, we find that *Whiteco* is not persuasive.

In *Lesser*, the appellants requested a use variance for the property, on which was situated an auto repair shop in a general retail business district. The city of Cleveland Board of Zoning Appeals ("BZA") denied the request. Appellants then appealed the BZA ruling to the trial court. They argued that they demonstrated their entitlement to the variance to conduct an auto repair business at the subject property, that the auto repair business was a permitted use as general retail, and that the BZA should have issued appellants an occupancy/change of permit. The trial court nonetheless dismissed appellants' suit.

Appellants appealed the trial court's decision dismissing the action to this court. They argued that the trial court erred when it affirmed the decision of the BZA denying appellants' request for a use variance. In the alternative, the

appellants argued that the trial court erred in affirming the BZA's ruling denying an occupancy and/or change of use permit to operate the auto repair business.

This court reviewed the BZA's factual findings which indicated that the retail sale of tires and/or the attendant installation services were permitted by the applicable zoning ordinance. Furthermore, Cleveland had issued permits for such use since 1962.

Given the foregoing facts, this court found that the BZA's conclusions that the property had been illegally used for thirty years was not supported by the evidence contained in the record. Furthermore, this court found that the evidence indicated that appellant's proposed use was permitted as an ancillary use at a service station and/or incidental services at a retail store. This court therefore reversed the trial's court's decision affirming the BZA's decision which denied appellants' request for an occupancy permit.

Given the facts of the case at bar, we do not find *Lesser* analogous. The issue in this assignment of error does not involve a decision of a board of zoning appeals denying an occupancy permit on the basis of whether a proposed use complied with the definition of a permissible use. In light of the aforementioned discussion and facts of the case *sub judice*, we decline to find *Pawuk, Lesser,* and *Whiteco* to be controlling authority.

This court has carefully scrutinized the evidence contained in the record. We find that the record herein does not substantiate K–Mart's assertion that it would meet the requirements set forth in Westlake's Zoning Code; thus, the trial court did not err when it held that K–Mart's storm water plan did not meet Westlake's Zoning Code. We have examined the Zwick report and find that it is insufficient evidence to demonstrate that K–Mart met Westlake requirements. While the report contains assertions relative to the storm water sewer disposition, the Zwick Report does not set forth details relative to how K–Mart's development plan would meet the applicable code requirements. The Zwick Report states, "Jack Miner Drive Storm Sewer System is designed to discharge to the proposed retention basin in the customary fashion, and a 'backup is not expected.'" K–Mart, in its brief, acknowledges that Westlake indicated on K–Mart's development plan that Westlake had concerns relative to K–Mart's storm sewer disposition plan. However, the record fails to set forth how K–Mart's development plan would comply with Westlake's code requirements with respect to storm water sewer disposition. Given the foregoing, the record supports the trial court's determination that K–Mart's development plan did not meet the requirements contained in Westlake's Codified Ordinances. Thus, K–Mart's assigned error three lacks merit.

Westlake cross-appeals and raises the following assignment of error:

"The trial court erred by finding that the traffic concerns raised by Westlake did not support Westlake's denial of K–Mart's development plan."

Given our disposition of the third assignment of error, we need not address Westlake's cross-appeal. App.R. 12(A).

*Judgment affirmed.*

PORTER and O'DONNELL, JJ., concur.